Kirkpatrick C. J.
This is a special verdict in ejectment, taken at the Salem circuit, in December, 1817.
It finds, in substance, that James Mason, on the 25tli of March, 1755, devised the premises in question, to his wife, Mary Mason, to the only proper use of her and her assigns, during here natural life; and after her decease, to his cousin Joseph Wood, and the heirs of his body, lawfully begotten, for ever ; and for want of such heirs, to his cousin Sarah Young, and the heirs of her body, lawfully begotten, for ever. That after the death of the said testator, the said Mary Mason entered into the said premises, and was thereof possessed, until the time of her death, which was some time in the year 1772. That the said Joseph Wood, after the death of the said testator, and during the life-time of the said Mary Mason, died, without issue; and that the said Sarah Young, after the death of the said Joseph Wood, but also during the life-time of the said Mary Mason, died, leaving three sons and one daughter, of whom William, was the eldest. That upon the death of the said Mary Mason-, the said William entered into the premises, and was thereof *810 possessed, until the 20th of February, 1773, when he sold conveyed the same, in fee, to one Jonathan Bilderbaek, and that he afterwards died, that is to say, on the 12th March, 1798, seized of a certain real estate in the county of Cumberland, of 130 acres of land ; and leaving two sons, James and William, of whom James was the elder, and is the lessor of the plaintiff. It further finds the deed of the 20th February, 1773, from William Young to Jonathan Bilderbaek, in hose verba; and then traces the title therefrom, down to the present defendants.
It is admitted, on all hands, that Mary Mason took an estate for life only, in the premises, by virtue of this devise ; that Joseph Wood took a vested remainder, in fee tail general, expectant upon the death of the said Mary Mason; and that Sarah * Young, took a like remainder, expectant, both, upon the death of the said Mary Mason, and upon the failure of heirs of the body of the said Joseph Wood, with reversion to the right heirs of the said testator. It is of course admitted, that upon the death of Joseph Wood, without issue, in the life-time of Mary Mason, Sarah Young became the next in remainder; and that upon her death, the said remainder descended to her son, the said William Young, as heir in tail, secundum formam doni.
If the plaintiff’s right,, then, rested here, there could be no doubt; for if tenant in tail alien in fee, though the alienee may lawfully enter, and hold during the life of the tenant in tail; yet, if he hold over after his death, against the issue in tail, the estate of such alienee, so holden over, may, at any time, be defeated by such issue.
The defendants, however, have raised up a defence, and have placed it upon four distinct grounds. The three first of these, in the order in which I shall take them, I shall mention in a cursory manner only, making án observation or two upon each, and then proceed to the last, which lies at the foundation of the plaintiff’s right.
1. It is said that if tenant in tail, alien in fee, the estate of the alienee can be defeated only by the entry of the ' issue in tail; that therefore an actual entry must be made, to complete his title, and so proved to have been done, at the trial, to enable him to sustain an action of *811 ejectment; and that the confession of lease, entry and ouster, will not supply the place of such proof; and entry is not here found, by this verdict.
When the essence of conveyances consisted in the actual livery of the seizin of the land, in the presence of the neighbourhood, or of special witnesses, and the deed of feofment was considered but as a mere memorandunq to keep that transaction in memory, it was holden in the wisdom of our ancient law, that if one wrould come in upon the feoffee, upon condition broken, or upon the abator, on the death of the ancestor, or in other cases, where the right arose by operation of law, he must come in by public entry, in the presence of witnesses also; that the defeasance of the estate, must be by an act of as great notoriety, as the creation of it had been. But when, afterwards, for the greater convenience, conveyances to uses crept in, and took the place of feoffments, when the legal estate remained in the bargainor, and *the use only passed to the bargainee, it was impossible, either that this publiclivery should be made, or that it should be defeated by a public entry, for a mere use was insusceptible of either the one or the other. And though, afterwards, the statute of uses annexed the possession to the use, yet still the use was the principal, and the possession the accident. The creation of the use was the creation of the estate; and the statute, by a sort of legal magic, transferred the possession without any public act in pads. Hence, public entries to defeat estates, ceased with public liveries to create them. An entry, to defeat an estate now, would be just as extraordinary, as a livery of seizin, to create one. Every man who has right of entry, makes his lease to try his title, without any such formality, (a) The confession of lease, entry, and ouster, therefore, by the defendant, in the common rule, is, in all cases sufficient in actions of ejectment, without proof of any actual entry, to defeat a precedent estate. This is sq in England, except in the case of a fine only, where the actual entry is expressly required by the statute; but here, fines are abolished, as a mode of conveyance. So far, therefore, as *812 I can now perceive, there is no exception to the rule. I not now speak of entries, to avoid the statutes of limitation. That is another subject.
2. It is said, in the second place, that the statute de donis conditionalibus, having been declared, by legislative act, to be no longer in force in this state, the plaintiff cannot come in and make title under it.
William Loung, the father of the plaintiff, who is admitted to have been seized in tail, died on the 12th March, 1798; and the act of the legislature, declaring the statute de donis to be no longer in force, was passed on the 13th June, 1799. The estate, therefore, if it passed at all, to the plaintiff, passed before the date of that act; and certainly it cannot be said, that the repealing of an act, or the rendering it, for the future, inoperative, will destroy an estate already vested under its authority, (a)
3. It is said, in the third place, that the deed of conveyance from William Young to Jonathan Bilderback, contains a covenant of warranty, binding himself and his heirs, to warrant and defend the said land, against himself, the said William Young, and all claiming under him; that the plaintiff is the heir of the said William Young, and is therefore barred, by the said cove*nant; and especially so as it is found by the verdict, that the said William died seized of certain other lands of an estate de-' scendible.
Warranties which descend upon the heir, and which may be taken advantage of by writ of warrantia chartss, or by voucher or rebutter, we are told, by Littleton, may be annexed to estates of freehold, or to estates of inheritance, which pass by livery, and also to incorporeal hereditaments which lie in grant; but that they cannot be annexed to mere chattels, whether they be real or personal. And much less can they be annexed to interests which are altogether of an equitable nature. Warranties, therefore, upon the sale of such chattels, or upon the passing of such equitable interests, must be taken advantage of by action of covenant, and *813 not otherwise. Can a warranty, then, contained in a deed of bargain and sale, which conveys the use only (for statute annexes the possession) be considered as a warranty annexed to, and descending with, the land, in such way as that the assigns of the bargainee, can take advantage of it by way of rebutter ? and particularly in an action of ejectment? Or are they not rather to be considered merely as personal covenants, and to be taken advantage of by action of covenant only? But without saying any thing upon this subject, it is enough to observe, at present, (for it was desired by the counsel to speak to it again) that a warranty by tenant in tail, without assets descending, does not bind the heir, (a) And here, though William Young is found to have died seized of certain real estate, yet it is not found that such real estate is of the value of the lands entailed, or that they descended to the plaintiff. Upon a mere presumption, then, and a presumption too, which has so little to support it, we cannot saj7 the plaintiff is barred. And especially so, as the covenant will still be open against him, in the hands of him who has the-lawful right.
4. But, in the fourth place, the principal ground of defence is still to be considered. It is said there are certain statutory provisions, respecting estates tail, which govern this case, and take it out of the rules of the ancient law.
There was an act passed on the 26th of August, 1784, which has for its object, among other things, the limitation of estates tail. The material words of this act, are these : “ Be it enacted, That all lands heretofore devised in tail, which have passed *through one descent, since the death of the testator, and are now in the second or more remote descent, from the testator, shall be deemed to be the proper estate, in fee-simple, of the present possessor, provided he holdeth the same in the line of descent mentioned in such devise.”
“ That all devises of land, heretofore made in tail, which have not already passed through one.descent, and also all devises ’ which shall hereafter be made in tail, shall be deemed to entitle the person, to whom the same may de *814 scend, to all the estate therein, which the testator had or cotfld deviseand
. “That D0 entailment of lands shall continue to entail same, in any case whatever, longer than the life of the person to whom the same hath been, or shall be, first devised, by such entailment.”
There was another act passed on the 23d of March, 1786, to explain this act, which declares, that the words, “ Passed through one descent since the death of the testator, and are now in the second or more remote descent from the testator,” in the nrst act, shall be understood to mean “ Been possessed by the first devisee in tail; and are now the property of the next devisee in tail, in the line mentioned in the devise under which they claim,” and that the words, “The line of descent,” shall be understood to mean, “The line of entailment.” This explanation touches the first clause of the act, .only; the second and third clauses of it, as above recited, remain, as at first wholly untouched by this explanation.
There is, certainty, no inconsiderable degree of confusion in the phraseology used in this explanatory act. Perhaps, however, b}r a little consideration, we may be able to give it a construction which will carry into effect the intention of the legislature.
The first act is entitled, “ An act to limit estates tail.” The evil complained of, in the preamble, is, that “ devises are sometimes made in tail without limitation of time, whereby the heirs are put to great expense, in suing out recoveries, in order to dock such entails.” This is the evil it proposes to remedy. It does not profess to limit the entailment in the hands of the immediate devisee, but in the hands of the heir only. There might be sufficient reasons, why the estate should be limited to the . hands of the devisee, with whom the testator was acquainted and whose discretion and prudence he did not think proper to trust; but, when it had passed into the hands of the heir, whom he could *not, certainty, know, and whose prudence he could, therefore, have no' reason to suspect, it was thought the genius of our government and the public good, required that it should be unfettered and subjected to alienation, like other estates.
*815 This seems to have been the view of the legislature, and to have been pretty clearly expressed in the first The only doubt that arose, or could arise, upon that act, and the only doubt pretended to he explained, was upon the words “ passed through one descent since the death of the testator, and is now in the second or more remote descent from the testator.” And the doubt was, whether, upon these words, if an estate tail had been devised to A., and upon his death had descended to B., it had then passed through one descent, and was in the second or more-remote descent; or whether B.’s life also must have been terminated, and the estate must have descended to his son C. in order to put it in the second descent. And, indeed, this mode of expression was certainly a very doubtful one, and one that required explanation. In a strict sense, passing through the hands of the immediate devisee could not be called passing through a descent, and descending from the devisee into the hands of the heir, could not put it in the second descent, for there had then been but one descent cast. To explain this doubt, and to declare explicitly, that when the lands had passed by descent from the devisee to the heir, the limitation should cease, was the only design of the explanatory act. It does not profess to change the object of the first act or to introduce a new principle, not contemplated by it, but merelj'- to explain the meaning of it; to declare the intention of the legislature in the words they had used. In order to accomplish this design, and at the same time to preserve the consistency of the act with itself, and with that which it is intended to explain, we must take some latitude in the construction of the words of it. We must understand the words, first devisee in tail, not absolutely, but relatively only ; not as the first devisee in tail, named in the will, but as the propositus or stock from which the issue in tail is to proceed; so that if there be a devise to A., in tail, with remainder to B., in tail, both A. and B. are to be considered as first devisees, in relation to their respective issues, they being distinct stocks from which distinct issues, and distinct lines of entailment are to proceed. So, too, we are to understand the words next devisee, not in a strict and technical sense, but in the sense *816 *in which the word devisee is sometimes used in common discourse; not as one named in the will, and taking by devise, strictly speaking, but as one taking as heir, according to the special limitation contained in the will upon the death of such first devisee.
This construction is supported by the consideration, that if we take the words first and next devisee, in their appropriate and technical sense, meaning by first, the person to whom the estate is first given by the will; and by next, the person to whom the remainder is given, in tail, the first clause of the act which operates upon anterior devises, would not unfetter the estate in the hands of the heir, at all, but only in the hands of the remainder man, which would be in direct contrariety to the manifest intention of the legislature; the explanation of the act would nullify the act itself, which can never be admitted. This construction, too, makes the first clause of the act speak the same language respecting anterior devises which the next clause ■ speaks respecting subsequent devises. The object of both the one and the other is to say, that in the hands of the immediate, devisee the entailment shall continue, but in the hands of the heir it shall cease.
This, too, was the construction put upon the words first devisee, in the case of Den v. Fogg, in September term, 1811. In that case, there was a devise made after the passing the act, to A. in tail general, with remainder to B., in tail male, and it was held that B., coming in as a remainder man, should not take the fee, as next devisee, but that he should be considered, himself, as a first devisee, as the person to whom the estate had first been devised, in relation to the line of entailment proceeding from himself; and, in that case, B., having had no male issue, though he had issue female, seven daughters, yet the estate was adjudged to revert to the right heirs of the donor. And the judgment rendered in that case, as I have been informed, was afterwards affirmed in the court of errors.
If this be so then, in the case before us, both Joseph Wood and Sarah Young were first devisees in tail, in relation to their respective issues; and William Young, the son of Sarah, who took as heir in tail upon the death of his mother, was the next devisee in tail. And if William■ *817 Young had continued to hold the iands until the passing of iho act, If they had then been his property, next devisee, the estate would have been converted into *a fee-simple, in his hands ; but having, before that time, sold and conveyed them to Bilderback, so that they were not then his property, as next devisee, and of course not within the words of the act, they could not be so converted ; and Bilderback having no pretence to be a devisee, or to hold in the line of entailment mentioned in the devise, this first clause of the act could have no operation at all upon the estate in his hands. I say it could have no operation at all, unless, indeed, it should be said that Bilderback, being the alienee, and standing in the place of the next devisee described in the act, (that is of William Young) he should take all the benefit under the act that the next devisee himself would have taken. But as this would be a forced construction, so it would put an end to the controversy, for then Bilderback would have the fee under this first clause.
The case, therefore, as it then existed, was not, according to my view of it, in any way affected by this first clause of the act; the lands were not in the situation described in that clause; the case was not one upon which that clause was intended to operate.
In opposition to this construction, however, it is said that these lands had never been possessed by Sarah Young, and that, therefore, she could not be the first devisee intended by this explanatory act; but that they had been possessed by William Young, her son, who came in as heir, upon her death, under the limitations of the will, and that, therefore, he must be considered as the first devisee, in this case; and that upon his death, which was after the passing of the act, the lands descended to his son, Jam.es Young, the lessor of the plaintiff, in fee-simple.
In answer to this it may be said, in the first place, that the possession of the tenant of the particular estate is, in one sense, the possession of the remainder man ; that Mary Mason’s possession was Sarah Young’s possession; that when this explanatory act speaks of the lands being possessed by the first devisee, it can, rationally, mean nothing else than such a possession as would be sufficient to pass *818 the estate by descent and to save the inheritance, for, in other view, whether the first devisee were possessed or not would be wholly immaterial, as to the object of this law; and such a possession Sarah Young unquestionably had.
But, in the second place, even if this were not so, the only * consequence would be, that this particular case is not within this first clause of the act. For when that clause speaks of lands which have been possessed by the first devisee, shall we say, it means lands which have never been so possessed ? or shall we pervert the whole meaning of language and say, that the heir who was not born at the time of the making of the will, and who comes in by descent after the death of the first devisee, is, himself, the first devisee ? Even that he should be called the second or next devisee, is making a very liberal allowance for the colloquial application of words, but to call him the first, would be a total abandonment of their meaning, both in colloquial and technical discourse. Surely, then, they cannot be thus distorted to meet a favourite case, or support a hasty opinion. They must receive their construction ; their meaning must be fixed; and, when fixed, must prevail in all cases.
There is a way of arguing, or rather of talking, upon subjects of this kind, which sometimes prevails, but which, notwithstanding, is far from being satisfactory. We frequently hear it said, that taking the 'act altogether, it means so and so, always what the speaker would have it mean ; and yet, when we come to analyze it and examine its several parts, neither any one clause, nor all of them taken in connexion, as they always must be, can, upon any rational construction, be made to mean any such thing. This is a mode of argument, or rather of carrying a point, without argument, which it is impossible to refute or to stand against, and yet it is altogether hollow at bottom. We have no right to say, the legislature meant what they have not expressed, and much less, the very contrary of what they have expressed.
Upon the whole then, I conclude that this first clause of the act does not at all bear upon our case, or give any rule concerning it.
*819 And, as to the second clause, that,' so far as it relates to anterior devises, gives the fee to those only who come in by descent, after the passing of the act, to which neither William Young nor Bilderback, can make the smallest pretence. The first and second clauses state particular cases, in which the estate shall be converted into a fee-simple, and they touch those cases only; but the third is more general, it comprehends all cases of entailment, whatsoever. If the entailment had been created before the passing of the act, and the life of the first devisee, as *above understood, was then extinct, it from that moment ceased; if it should be created after the passing of the act, or if the life of such first devisee were not then extinct, it should, upon such life becoming extinct, immediately cease. The first two clauses direct in whose hands the estate shall become a fee-simple ; the last cuts off the entailment, destroys the limitations, unfetters the estate, in whosoever hands the same may be lawfully found.
But taking this for granted, what effect will it have in this case; or in other words, in whose hands did the act find this estate at the time of the passing of it.
The plaintiff has argued this question, as if the alienation by the tenant in tail, though purporting to be in fee, passed an estate for the life of the tenant in tail, only, putting the remainder, if I may so call it, of such estate tail, in abeyance, for the benefit of the issue; and that therefore this act, if it operates upon this estate at all, must operate upon it as it rests in abeyance, must unfetter it, for the benefit of the heir, and render it a fee-simple in his hands, and not in the hands of such alienee.
But I believe this doctrine cannot be maintained. A tenant in tail has an estate of inheritance in himself. He had it before the statute de donis, under the name of a conditional fee, and that statute makes no alteration in it in that respect, it only restrains the alienation of it to the disinherison of the issue in tail. He has the estate in him; and as the power of alienation is an incident inseparable from it, he may alien it by any of the usual modes of conveyance, and vest it in the alienee, as completely as he himself had it. In the hands of the alienee, *820 indeed, it is not called an estate tail, but a base fee, a fee - defeasible by the issue in tail. And though such alienation, if it be by feoffment with livery of seizin, or by fine .of record with proclamations, will toll the entry of the issue, and put him to his formedon in the descender, yet even in that case, it has never been considered as a violation of the statute de donis, and much less, if it be by bargain and sale, or other conveyance which has its operation by the statute of uses, and which puts him to entry only.
Since, then, the tenant in tail has an estate of inheritance, since the power of alienation is inseparable from such an estate, and since such an alienation, though it put the issue to his formedon, or to his entry, is no violation of the statute, it follows that an estate, created by such alienation, does not determine by the *death of the tenant in tail, but remains until defeated by the heir. This is the doctrine laid dowm in the case of- Michal v. Clark, in 1702, (Salk. 619, and passim) and has been recognized as the law in every succeeding case upon that subject.
If the estate of such alienee were for the life of the tenant in tail only, no unfettering of it from its limitations, could extend it, in his hands, beyond that period, without a new conveyance, it would still be an estate for life, and to whomsoever it might afterwards go, it could not be retained by him. But being an estate in fee, that is, an estate of inheritance, not terminating upon the death of the tenant in tail, but subject to the limitations of the first gift only; if such limitations be moved out of the way, it becomes absolute, and is no longer defeasible. There is nothing to defeat it.
Hence, we find* that if tenant in tail, sell to one and his heirs, and afterwards, suffer a fine or common recovery-, with a declaration of uses to another, this fine or recovery, if good in itself, shall operate to the benefit of the bargainee. It unfetters the estate which is already in his hands. Same case, Michal v. Clark. Tyrrel v. Mead, et al. Bur. 1703. Stapilton v. Stapilton, 1 Atk. 3.
So. if a tenant in tail confess a judgment or statute, or make a mortgage, and afterwards suffer a recovery, which bars the entail, such recovery lets in the incumbrancer. *821 And so also, if there be tenant in tail, special, as to the heirs of his body, by his present wife, with remainder himself in fee, and he alien, and then the issue fail, the failure of issue unfetters the estate, and it shall be indefeasible in the hands of the alienee, and shall not pass in the remainder.
We may fairly conclude then, that if tenant in tail alien or incumber the estate, and afterwards remove the limitation, or bar the entail, it shall inure to the benefit of the alienee or incumbrancer, because, he alone has the estate upon which it can operate, (a)
The notion, therefore, that this estate tail was in abeyance, and that the act operated upon it in that situation, and unfettered it for the benefit of the issue, is without foundation.
The act, if I have taken a correct view of it, operates upon the estate without respect to the person in whose hands it may be found ; it destroys the limitation ; it declares the entailment shall not continue. Well then, if it does so operate, and if it *operates upon this estate at all, it must operate upon it in the hands of the defendant, for it exists no where else; it must destroy the limitation, and bar the heir in tail in their favour. By what right shall the heir come in ? By the entailment ? It shall not continue to entail the same longer than the lije of the person to whom the land teas first given, that is, the life of the donee in tail, the propositus, the person from whom the line of entailment was to begin, and from whom the issue was to proceed ; and in this case, that person was Sarah Young, who was dead long before the passing of the act.
In considering this question, I have taken no notice of the case of Hinchman v. Clark, et al. cited from Coxe’s reports, because, though the same question was raised by the counsel there, it was not decided by the court. The Chief Justice, Kinsey, in his very able and handsome exposition of the case, places the stress of the argument upon the very circumstance that the defendant expressly and publicly purchased the land for the life of the tenant *822 in tail- only, and no longer, so that the decision there has ■ no bearing upon this case,
Upon the whole matter, then, I am of opinion that the .postea should be delivered to the defendant.
Rossell J.
united in this opinion.
Southard J.
In the result of the argument of the Chief Justice, I entirely concur. I differ somewhat as to the operation of the first clause and the enlargement of the estate.
The object of the statute was, so to order estates, that entails should not last longer tham the life of the first taker. It often happened, that a testator was willing to benefit an individual, perhaps his child, by the use of his estate, during that individual’s life, but had not sufficient confidence in him, to entrust the whole estate to him, lest he should squander it, and thus it should never reach his heirs, whom the testator designed ultimately and principally to benefit.' This object was laudable; but it was against the public policy to continue lands by legal restraints, for ages, in the same family. The legislature therefore, intended to unfetter and release it, after the life of him to whom it was first given: to free the land, but to free it for the benefit of the heir, to whom the testator directed it to go. The two objects are always to be united : otherwise, it would happen in *many cases, that the estate would, in effect, be a fee in the hands of the first devisee. He sells; if it be enlarged in the hands of purchaser, the second devisee or heir, is altogether defeated; and the first has really sold a fee. Whether, therefore, this estate was enlarged for the benefit of Bilderbaclc, depends on the question, who was first devisee or taker. If Sarah Young, then William is the second, and the estate was enlarged for his benefit, and of course for the benefit of his alienee. If William, the statute cannot operate until the estate comes to his heir; his purchaser can receive no benefit from the enlargement, and the lessor must recover, for his father could not by an improper sale, take the estate from the heir in tail.
Who then is the first devisee ? It is a case of lands *823 devised in tail before the statute; if therefore, it had passed through one, and was then in the second or remote descent, and the holder was in the line of descent, it became a fee. Den v. Fogg, teaches us, that this second in descent, is the second in the same line, and if two or more lines are created, and all except the last fail, without enjoying the land, it must be the second in that line. Sarah Young is not then, a second devisee ; she is the first, in the line, in which she is to take. It commences with her. If she had been living, at Mary Mason’s death, she would have entered into actual possession, not as second, but as first, devisee; not by right derived through another, but by original gift. Such being her right, after Joseph Wood’s death, she had necessarily, until her own death, a possession of the estate, in virtue of Mary Mason’s possession. The remainder was neither contingent nor in abeyance. William Young, then, when he entered into actual possession of the estate, did it not as first, but second in the line ; he did not take by original grant, but derived his right by descent, through his mother. When he sold, with warranty, his deed conveyed such right as he had, and no other. It conveyed his right as tenant in tail.* It placed Bilderbach in the enjoyment of all his rights. Bilderbach’s possession was his possession; Bilderbach’s rights his rights; and at his death, his heirs had a right to enter, as if he had not conveyed. At the passing of the act, Bilderbach virtually stood in his place. The land was held by virtue of, and to the extent and no more, of the rights of the second person in the line of entailment. It was land, therefore, on which this clause of the statute fairly operated. William * Young, united, in himself, all the requirements of the statute. He was the second devisee, or possessor, in the line of entailment. And, when to this is added, the express provision, that no devise shall entail longer than the life of the person to whom it was first given ; I do not perceive how it was possible to continue until it reached the lessor, the third in the line. The estate must have been unfettered in William’s life.
If this be not so, I am at a loss to see when and how this statute is ever to affect this land at all. It must go *824 quit from all restraint. There is no clause of the act applies to it. The moment the law passed, I consider the estate in this land as becoming a fee for William’s But he had sold not only his right as tenant in tail, but a right as tenant in fee; which he then had not. Having so sold, he cannot, against his own deed, recover. The lessor cannot recover all, because it is no longer entailed. The heirs general of William cannot recover that which he had sold, and from which he was barred. The title of defendant is clear.
Postea delivered to defendants, and judgment for them.

 Farley vs, Craig, 6 Hal. 278.

 Wright vs. Scott, 4 Wash. C. C. 16. Den, Berdan vs. Van Riper, 1 Har. 7. Den, Spachius vs. Spachius, 1 Har. 172. Den, James vs. Dubois, 1 Har. 286. The Boston Franklinite Co. vs. Condit, 4 C. E. Gr. 394. Van Note vs. Downey, 4 Dutch. 219.

 See Nix. Dig. 146, § 16.

 See Porch vs. Fries, 3 C. E. Gr. 205. Moore vs. Rake, 2 Dutch. 574. Vreeland vs. Blauvelt, 8 C. E. Gr. 483.